**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

FLAMBEAU RIVER PAPERS, LLC,
a Wisconsin limited liability company,

      Plaintiff,

                                   CASE NO. 15-cv-594

vs.

TURBINE GENERATOR MAINTENANCE,
INC., a Florida corporation,

      Defendant.

_____

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO**
**TRANSFER VENUE OR, IN THE ALTERNATIVE, MOTION TO STAY**

      COMES NOW the Defendant, TURBINE GENERATOR MAINTENANCE, INC., by and through its undersigned counsel, and pursuant to 28 U.S.C. §1404(a), moves to transfer the instant action filed by Plaintiff, FLAMBEAU RIVER PAPERS, LLC or, alternatively, to stay these claims, and states as follows:

## I.  INTRODUCTION

      1.      On July 17, 2015, Turbine Generator Maintenance, Inc. ("TGM") filed a four-count Complaint against Flambeau River Papers, LLC ("Flambeau") in Lee County Circuit Court, Florida.

      2.      Flambeau removed that action to the United States District Court for the Middle District of Florida.

      3.      In its response, Flambeau asserted certain Counterclaims against TGM with the court in Florida.

4.      A month after the Florida action commenced, Flambeau initiated its own legal proceedings in Price County, Wisconsin.  The claims set forth in the instant action are identical to the Counterclaims Flambeau asserted in the Florida case.

5.      This matter should be transferred to the United District Court for the Middle District of Florida because (1) the parties executed a contract that designates Florida as the exclusive venue for all legal disputes; (2) the first-filed doctrine is applicable in this case.

6.      Alternatively, this case should be stayed pending the final resolution of the Florida action.

## II.  BACKGROUND

### A.      Formation of Contract and Terms

#### (1)      Allegations in Wisconsin Complaint

7.      Taking the allegations set forth in the Complaint as true, the Plaintiff Flambeau states that it operates a paper mill in Wisconsin.   See ¶ 1 of Complaint.   Furthermore, Plaintiff/Counter-Defendant TGM provides services related to the inspection, assessment, and repair of turbines. ¶ 2 of Complaint.

8.      In an effort to make its mill more efficient, Flambeau looked for vendors to inspect, assess and repair the turbine generator at its mill.  ¶ 5 of Complaint.

9.      TGM inspected the turbine generator, suggested solutions for Flambeau, and provided a price for the work.   Flambeau countered TGM's suggestions with additional conditions, which TGM accepted. ¶ 6 of Complaint.

10.      Flambeau alleges that TGM failed properly staff the inspection and, after the contract had been awarded, TGM pressured Flambeau to expend additional money to pay for a TGM controls engineer to come to the site.  ¶¶ 7-8 of Complaint.

-2-

11.     Flambeau claims that TGM's acts and omissions led to unexpected delays and losses amounting to thousands of dollars per day. Id.

12.     Flambeau acknowledges in its Complaint that the parties entered into an agreement whereby TGM would perform certain inspection and work on Flambeau's turbine for a price.  See ¶¶ 5-6 of Complaint.

13.     Flambeau goes so far as to state that "**Flambeau and TGM have executed a valid and binding contract**." See ¶ 19 of Complaint (emphasis added).

14.     However, Flambeau decided not to attach a copy of that contract to its Complaint in an apparent effort to keep out the forum selection clause.

### (2)     The Written Contract Between The Parties

15.     TGM attached a copy of the subject written agreement when it filed suit in Lee County Circuit Court, Florida on July 17, 2015.   A true and correct copy of the Florida Complaint is attached hereto as Exhibit 1.

16.     The Florida Complaint states that TGM provides maintenance service and repair on turbine generators.   See ¶ 5 of Florida Complaint.   Furthermore, Defendant Flambeau produces paper printing and specialty papers throughout the United States. See ¶6 of Florida Complaint.

17.     In 2014, the parties negotiated for TGM to perform a major inspection on Flambeau's turbine generator Unit #1 – 5.7MW General Electric Steam Turbine Generator at its mill in Park Falls, Wisconsin. See ¶7 of Florida Complaint.  TGM submitted an initial proposal to Flambeau.   Upon review, Flambeau requested that certain revisions be made. See ¶ 8 of Florida Complaint.

18.     On September 18, 2014, TGM submitted a revised proposal to Mark Fischer at Flambeau, entitled "**TGM Proposal No. WI8429**", which incorporated changes requested by Flambeau from the initial proposal.  See Exhibit A.  ¶9.  The Proposal included a Proposal Letter, technical narrative, work scope, division of responsibilities, general terms, time and material rate sheet, Service Agreement Terms & Conditions, and resumes. Id.

19.     The Terms & Condition in the revised proposal included a Dispute Resolution which stated, *inter alia*, that:

> Each of the parties irrevocably submits to the exclusive jurisdiction of any court of the State of Florida of the United Sates District Court of the Southern District of Florida over any action, suit or proceeding relating to or arising out of this Agreement and the transactions contemplated hereby, including for purposes of interpreting or enforcing the arbitration provision above.  Each party hereby irrevocably waives any objections, including, with limitation, any objection to the laying of venue or based on the grounds of *forum non conveniens* which such party may now or hereafter have to the bringing of any arbitration or any proceeding in any such court.

See Exhibit A, Service Agreement, Terms & Conditions, Section 19.

20.     The Agreement was executed as of October 3, 2014 when the parties executed a Purchase Order on said date.  See Exhibit B.  The parties executed additional Purchase Orders on November 20, 2014 and December 18, 2014, which reference Flambeau and their address in Park Falls, Wisconsin.  See Composite Exhibit C.  The December 18, 2014 purchase order makes reference to proposal **"WI8429"** at the top of the order.  All three of these purchase orders were executed by a Flambeau representative.  Id.

21.     In addition, the parties executed several Contract Change Orders on December 3, December 15, and December 16, 2014.  ¶12 of Florida Complaint.  Each of these Change Orders referenced **"Contract WI8429."**  See Composite Exhibit D.  All three of these Change Orders were executed by a Flambeau representative.  Id.

22.     The total amount of the agreement was $983,410.00.  ¶ 13 of Florida Complaint.

23.     TGM began to mobilize its employees and equipment at the Flambeau mill and commenced its work on October 24, 2014.  ¶14 of Florida Complaint.  TGM completed its work on Flambeau's turbine on February 22, 2015.  ¶ 15 of Florida Complaint.  To date, Flambeau has paid TGM a total of $336,512.00.   Flambeau still owes $684,866.10 to TGM for services rendered pursuant to the Agreement, which includes late fees and interest.  A copy of the most recent Invoice dated July 16, 2015 is attached hereto as Exhibit 1, Attachment E.

**B.     Procedural Background**

**(1)     Florida Litigation**

24.     TGM made repeated demands in writing for payment from Flambeau over the course of several months and sent invoices.  Flambeau did not respond.

25.     On July 17, 2015, TGM filed a Complaint in the Lee County Circuit Court in Florida, Turbine Generator Maintenance, Inc. v. Flambeau River Papers, LLC, Case No. 15-CA-1861 (Lee County).  The Complaint set forth counts for breach of contract, violation of Florida's Deceptive and Unfair Trade Practices Act, unjust enrichment, and account stated.  See Exhibit 1.

26.     Flambeau was served with the Summons and Complaint for the Florida action on July 23, 2015.

27.     On August, 10, 2015, Flambeau filed a Notice of Removal with the United States District Court for the Middle District of Florida.  Case No. 2:15-cv-478-FTM-38MRM.

28.     On August 17, 2015, Flambeau filed an Answer, Affirmative Defenses and Counterclaims against TGM.   A true and correct copy of said Answer is attached hereto as Exhibit 2.

29.     In its Counterclaims, Flambeau alleges that the parties entered into a contract whereby TGM would perform an inspection and certain services at Flambeau's plant, but that TGM failed to perform as agreed.

30.     Flambeau's Counterclaims allege counts for intentional misrepresentation/fraud in the inducement, breach of contract, breach of covenant of good faith and fair dealing, and unjust enrichment.

31.     On September 8, 2015, TGM filed a Motion to Dismiss Flambeau's Counterclaims and a Motion to Strike Affirmative Defenses.  Flambeau's responses to these motions are due on October 2, 2015.

### (2)      Wisconsin Action

32.     On August 14, 2015, Flambeau filed a Complaint with the Price County Circuit Court in Wisconsin.

33.     A review of the Wisconsin Complaint reveals that Flambeau has simply duplicated its Counterclaims from the Florida action by alleging counts for intentional misrepresentation/fraud in the inducement, breach of contract, breach of covenant of good faith and fair dealing, and unjust enrichment.

34.     On September 16, 2015, TGM filed its Notice of Removal with this Court based on diversity jurisdiction.

### III. STANDARD OF REVIEW

### A.      Motion to Transfer Venue

Federal law provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28

U.S.C. §1404(a).  "A motion to transfer under *§1404(a)* . . . calls on the district court to weigh in the balance a number of case-specific factors" and that the "presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus."  <u>Stewart Organization, Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988).  *Section 1404(a)* therefore provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district.  <u>Atlantic Marine Construction, Inc. v. U.S. Distr. Court for W.D. Texas</u>, 134 S. Ct. 568, 579 (2013).

When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.  <u>Atlantic Marine</u>, 134 S. Ct. at 581. a proper application of §1404(a) requires that a forum-selection clause be "given controlling weight in all but the most exceptional cases." <u>Stewart</u>, 487 U.S. at 33.

###    B.    Motion to Stay

The discretionary power of the federal court in which the first-filed action is pending to enjoin the parties from proceeding with a later-filed action in another federal court is firmly established. <u>See</u> <u>Minnesota Mining & Mfg. Co. v. Rynne</u>, 661 F.2d 722 (8th Cir. 1981) (per curiam); <u>Martin v. Graybar Elec. Co., 266 F.2d 202, 204</u> (7th Cir. 1959); <u>see also</u> 6 Charles A. Wright, et al., Federal Practice and Procedure § 1418, at 145-46 (2d ed. 1990) ("Indeed, by granting an injunction in this context, the court furthers the general federal policy against multiplicity of litigation embodied in [Federal Rule of Civil Procedure 13(a)].").

## <u>LEGAL ANALYSIS</u>

###    A.    Forum Selection Clause

In the instant case, Flambeau states in its Complaint that "Flambeau and TGM have executed a valid and binding contract." <u>See</u> ¶ 19 of Complaint (emphasis added).  However,

Flambeau decided not to attach a copy of that contract to its Complaint.  In spite of Flambeau's attempt to plead around the contract, it is clear that the parties entered into a written contract that set forth a forum selection clause.

On September 18, 2014, TGM submitted a revised proposal to Mark Fischer at Flambeau, entitled "TGM Proposal No. WI8429", which incorporated changes requested by Flambeau from the initial proposal.  See Exhibit 1, Attachment A.  The Proposal included a Proposal Letter, technical narrative, work scope, division of responsibilities, general terms, time and material rate sheet, Service Agreement Terms & Conditions, and resumes. Id.  The Terms & Condition in the revised proposal included a Dispute Resolution which stated, *inter alia*, that:

> **Each of the parties irrevocably submits to the exclusive jurisdiction of any court of the State of Florida of the United Sates District Court of the Southern District of Florida over any action, suit or proceeding relating to or arising out of this Agreement** and the transactions contemplated hereby, including for purposes of interpreting or enforcing the arbitration provision above. **Each party hereby irrevocably waives any objections, including, with limitation, any objection to the laying of venue** or based on the grounds of *forum non conveniens* which such party may now or hereafter have to the bringing of any arbitration or any proceeding in any such court.

See Exhibit 1, Attachment A, Service Agreement, Terms & Conditions, Section 19 (emphasis added.

This Agreement was executed as of October 3, 2014 when the parties signed a Purchase Order on said date.  See Exhibit 1, Attachment B.  The parties executed additional Purchase Orders on November 20, 2014 and December 18, 2014, which reference Flambeau and their address in Park Falls, Wisconsin. See Exhibit 1, Composite Attachment C.  The December 18, 2014 purchase order makes reference to proposal **"WI8429"** at the top of the order.  All three of these purchase orders were executed by a Flambeau representative.  Id.

-8-

The Supreme Court recently considered a case with very similar facts. <u>Atlantic Marine Construction, Inc. v. U.S. Distr. Court for W.D. Texas</u>, 134 S. Ct. 568 (2013).  In that case, Atlantic Marine, a Virginia corporation, entered into a contract to build a center in the Western District of Texas.  Atlantic Marine then entered into a subcontract with J-Crew Management, a Texas corporation.  <u>Id.</u> at 575.  This subcontract included a forum-selection clause which stated that all dispute between the parties "shall be litigated in the Circuit Court for the city of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division."  <u>Id.</u>

When a payment dispute arose, J-Crew sued Atlantic Marine in the Western District of Texas based on diversity jurisdiction, and Atlantic Marine moved to dismiss the suit based on venue or, in the alternative, transfer the case to the Eastern District of Virginia under §1404(a). <u>Id.</u> at 576.  The District Court denied both motions, finding that Atlantic Marine bore the burden of establishing that a transfer would be appropriate under §1404(a).  The Court of Appeals agreed with the District Court that §1404(a) is the exclusive mechanism for enforcing a forum selection clause that points to another federal forum when venue is otherwise proper in the district where the case was filed.  <u>Id.</u>

In its ruling, the Supreme Court explained that "[i]n the typical case not involving a forum-selection clause, a district court considering a §1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties and various public-interest considerations."  <u>Atlantic Marine</u>, 134 S. Ct. at 581.  The district court typically weighs the relevant factors and decides whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." §1404(a).

The analysis changes, however, when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." Id. (citing Stewart, 487 U.S. at 31). The Atlantic Marine Court explained that "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." Id., at 581 (citing Stewart, 487 U.S. at 33). For this reason, and because the controlling consideration under *§1404(a)* is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." Id. at 581.

The Atlantic Marine Court instructed that the presence of a valid forum-selection clause requires district courts to modify their usual §1404(a) analysis in three ways: (1) The plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff carries the burden of showing that transfer to the forum for which the parties bargained is unwarranted, Id. at 581 (citing Van Dusen v. Barrack, 376 U.S. 612, 635 (1964)); (2) a court evaluating a defendant's §1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation, Atlantic Marine, 134 S. Ct. at 582; and (3) when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a *§1404(a)* transfer of venue will not carry with it the original venue's choice-of-law rules--a factor that in some circumstances may affect public-interest considerations. Id. at 582 (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, n. 6 (1981)).

-10-

In this case, like in <u>Atlantic Marine</u>, the parties executed a written agreement.  This agreement contained a forum selection clause that stated "[e]ach of the parties irrevocably submits to the exclusive jurisdiction of any court of the State of Florida of the United Sates District Court of the Southern District of Florida over any action, suit or proceeding relating to or arising out of this Agreement."  <u>See</u> Exhibit 1, Attachment A, Service Agreement, Terms & Conditions, Section 19.  TGM invoked this clause when it commenced the Florida action in the Circuit Court in Lee County, Florida.  Flambeau then removed the case to federal court in the Middle District of Florida.

However, Flambeau chose to disregard the forum selection clause in the only agreement executed by the parties.  The <u>Atlantic Marine</u> Court was very clear that "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." <u>Id.</u>, at 581 (citing <u>Stewart</u>, 487 U.S. at 33).  It went on to explain that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." <u>Id.</u> at 581.

Rather, as the party defying the forum-selection clause, Flambeau now carries the burden of showing that transfer to the forum for which the parties bargained is unwarranted, <u>Atlantic Marine</u>, 134 S.Ct at 581 (citing <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 635 (1964)).  Because Flambeau is not able to meet this high burden, this Court should enforce the forum selection clause that the parties consented when they executed the subject agreement, and this case should be transferred to the United States District Court for the Middle District of Florida.

**B.      First-Filed Rule**

After making repeated demands for payment, TGM commenced its legal action in Florida on July 17, 2015.  Flambeau was served with the Summons and Complaint on July 23, 2015.

Flambeau then filed its Notice of Removal of the Florida action on August 10.  It was not until four days later, on August 14, 2015, that it commenced its legal proceedings in Wisconsin state court.

Generally, as between state and federal courts, the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction…." Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 817 (1973).  See Donovan v. City of Dallas, 377 U.S. 408 (1964)). As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation. See Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., supra; Steelman v. All Continent Corp., 301 U.S. 278 (1937); Landis v. North American Co., 299 U.S. 248, 254 (1936). This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them. England v. Medical Examiners, 375 U.S. 411, 415 (1964).

The well-established rule is that in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." Orthmann v. Apple River Campground Inc., 765 F.2d 119, 121 (8th Cir. 1985). This first-filed rule "is not intended to be rigid, mechanical, or inflexible," Orthmann, 765 F.2d at 121, but is to be applied in a manner best serving the interests of justice. The prevailing standard is that "in the absence of compelling circumstances," Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169, 1174 (11th Cir. 1982), the first-filed rule should apply.  Under the "first-filed" rule, in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." Rutlin v. United States, 849 F.Supp. 34, 35 (E.D. Wis. 1994) (citing Northwest Airlines,

Inc. v. American Airlines, Inc., 989 F.2d 1002, 1005 (8th Cir. 1993)).  Courts generally follow the first-filed rule unless the "balance of convenience" or "special circumstances" favor the second action.

In this case, TGM commenced legal proceedings in Florida a month prior to Flambeau filing its Complaint in Wisconsin.  This was after TGM made repeated demands for payment over the course of several months, and Flambeau refusing to respond.   The claims Flambeau has filed in Wisconsin are identical to the Counterclaims it filed in Florida.  Allowing the Wisconsin action to move forward would lead to duplicative litigation and potentially inconsistent judgments.   For these reasons, the Florida Action should be allowed to proceed with the Wisconsin suit either being transferred and consolidated into the Florida Action or stayed until final resolution of the Florida action.

## CONCLUSION

For the reasons set forth above, the Defendant, Turbine Generator Maintenance, Inc. respectfully requests that this Court transfer this matter to the United States District Court for the Middle District of Florida, Fort Myers Division.  Alternatively, the Defendant requests that this matter be stayed until such time as the Florida action has reached a final resolution.

_/s/Kerry L. Gabrielson_

**GODFREY & KAHN, S.C.**
John Kirtley (State Bar No. 1011577)
jkirtley@gklaw.com
Kerry L. Gabrielson (State Bar No. 1084845)
kgabrielson@gklaw.com
One East Main Street
Suite 500
Madison, WI 53701-2719
P: 608-257-3911
F: 608-257-0609

-13-

**BUCHANAN INGERSOLL & ROONEY PC**
Mark C. Anderson (*pro hac vice* application pending)
Mark.Anderson@bipc.com
2235 First Street
Fort Myers, FL 33901
P: 239-334-7892
F: 239-425-6380

*Attorneys for Defendant Turbine Generator*
*Maintenance, Inc.*

14386080.1

-14-