**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

FLAMBEAU RIVER PAPERS, LLC, a
Wisconsin limited liability company,

    Plaintiff,

vs.                                                                                    CASE NO. 15-cv-594

TURBINE GENERATOR MAINTENANCE,
INC., a Florida corporation,

    Defendant.

_____

**DEFENDANT'S REPLY TO PLAINTIFF'S BRIEF OPPOSING DEFENDANT'S**
**MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, MOTION TO STAY**

    COMES NOW the Defendant, TURBINE GENERATOR MAINTENANCE, INC., by and through its undersigned counsel, and pursuant to 28 U.S.C. §1404(a), files this Reply to Plaintiff's Brief Opposing Defendant's Motion to Transfer Venue or, in the Alternative, Motion to Stay , and states as follows:

### I.  INTRODUCTION

    1.    The instant case was filed by Plaintiff Flambeau in Price County Circuit Court one month after Defendant Turbine Generator Maintenance ("TGM") initiated legal proceedings in Florida.

    2.    Flambeau has asserted the same claims in Wisconsin that it asserted in its Counterclaims in Florida, which are before the U.S. District Court for the Middle District of Florida.  They are essentially mirror proceedings.

-1-

3.      TGM removed this case to federal court and filed a Motion to Transfer Venue or, in the Alternative, Motion to Stay based upon the forum clause in the only written contract the parties executed.

4.      TGM files this Reply to provide further explanation as to the following issues and arguments made by Flambeau:

(a) The Purchase Order referenced by Flambeau is only one part of the agreement, not the entire contract;

(b) Flambeau attempts to add terms to the contract that are simply not there, including the signing of the services agreement;

(c) The Declaration of Kathy Lueloff does not contradict the creation of a single contract that includes a forum clause;

(d) Flambeau invoked the Warranty provision of the very contract it seeks to disavow by serving a Warranty demand letter to TGM.

(e)  The First-Filed Rule supports transfer of this case to the U.S. District Court for the Middle District Court of Florida where TGM commenced its legal proceedings before this case.

5.      For all these reasons, this matter should be transferred to the United District Court for the Middle District of Florida because (1) the parties executed a contract that designates Florida as the exclusive venue for all legal disputes; (2) the first-filed doctrine is applicable in this case.  Alternatively, this case should be stayed pending the final resolution of the Florida action.

## II. FACTS

Flambeau submitted three Declarations to support their Brief Opposing the Motion to Transfer Venue or, Alternatively to Stay.  TGM now submits an Affidavit by Robert Davis, Chief Financial Officer of the company, to address the factual shortcomings and misrepresentations set forth in those Declarations.  The following facts are taken from the Davis Affidavit, see Exhibit A.

TGM is a small turbine generator repair and maintenance company based out of Cape Coral, Florida.  TGM currently has 52 employees.  TGM has no office in Wisconsin and does not maintain employees in Wisconsin.  In August 2014, TGM received a Request for Proposal from Flambeau River Papers, LLC ("Flambeau") for services needed at Flambeau's mill.  In response to this Request, TGM sent several employees to Flambeau's mill and conducted an inspection of the subject turbine.  TGM prepared and sent an initial written proposal to Flambeau for its consideration. See Davis Affidavit, pp. 1-2.

Flambeau contacted TGM in Florida and requested a revision of quotation regarding the inspection that Flambeau had requested that TGM perform.  In response, TGM submitted a revised proposal on September 18, 2014.  See TGM Proposal No. WI8429 R2, attached hereto as Exhibit B.  As is its practice and policy, TGM included a Work Scope, General Terms, and Services Agreement.   See Davis Affidavit, p. 2.   In order to accept the revised proposal, Flambeau was required to sign a Purchase Order that referenced proposal No. WI8429 R2. Flambeau was not required to sign the Services Agreement, as evidenced by the lack of a signature line in the Services Agreement. Id. at pp. 2-3.

On September 30, 2014, Dave Wagner of Flambeau sent Patrick McNaughton of TGM an email with an attachment.  See Davis affidavit, p. 2 and Exhibit 2.  Mr. Wagner stated

"Gentlemen, after intense review FRP [Flambeau River Papers] will accept the turbine generator major rebuild providing clarification of the following issues."  The attachment goes on to discuss eight different items, including warranty and cost.  While Flambeau touches upon many issues in this correspondence, it does not object to the Services Agreement attached to Proposal WI8429. Id.

TGM did in fact receive a signed Purchase Order dated October 3, 2014 that referenced proposal No. WI8429 R2 and reiterated the essential terms of said proposal.  See Exhibit C.  It was understood that Flambeau had accepted all of the terms in TGM's proposal No. WI8429 R2. See Exhibit A, p. 2.

TGM is a small company that takes precautions to protect its legal interest in the event of nonpayment for its services.  It is standard company policy to attach the Services Agreement to its contract which includes a forum selection clause.   At no point in the negotiations did Flambeau ever object, either verbally or in writing, to the Services Agreement and the forum selection clause set forth therein.  See Exhibit A, p. 3.

When TGM received the Purchase Order from Flambeau, it was understood by both parties that Flambeau had accepted the September 18, 2014 proposal and the Services Agreement attached thereto and referenced therein.  Soon after receiving the signed proposal, TGM began mobilization of its tools and employees to Wisconsin to perform the requested services.  See Exhibit A, p. 3.

Flambeau executed 19 separate Change Orders over a period of 33 days from November 13 through December 18, 2014, raising the contract price to nearly $950,000.00.  Each Change Order specifically referenced TGM's proposal No. WI8429.  See Exhibit A, 4. Eight of the Change Orders were performed on a "time and materials" basis, the rates for which can only be

referenced in the parties agreement.  Butch Johnson, president of Flambeau, gave TGM several verbal and written assurances in early 2015 that Flambeau would pay TGM for the services rendered.  As of today, TGM has only received a partial payment.  Flambeau still owes TGM $684,886.10 for services rendered. See Exhibit A, p. 3.

On October 12, 2015, TGM's counsel received a demand letter from Flambeau's counsel, demanding that TGM perform certain warranty work.  The only warranty provided by TGM to Flambeau is set forth in Proposal No. WI8429 and the accompanying Services Agreement. See Exhibit A, pp. 3-4.


## III. LEGAL ANALYSIS

### A.  The October 3, 2014 Purchase Order Is a Part of the Contract, Not Its Entirety

Flambeau acknowledges in its Complaint that the parties entered into an agreement whereby TGM would perform certain inspection and work on Flambeau's turbine for a price. See ¶¶ 5-6 of Complaint.  Flambeau goes so far as to state that "Flambeau and TGM have executed a valid and binding contract." See ¶ 19 of Complaint.  However, Flambeau decided not to attach a copy of that contract to its Complaint in an apparent effort to keep out the forum selection clause.  In fact, given another opportunity to attach the purported written contract when filing its Response to the Motion to Transfer Venue, Flambeau again chose not to attach a copy of the purported written contract.

After some negotiations between the parties, TGM submitted a revised "Proposal No. WI8429 R2" on September 18, 2014.  A true and correct copy of this Proposal is attached hereto as Exhibit B.  The second page of the Proposal, which sets the "Proposal Contents" lists the following items that are a part of the Proposal: Proposal Letter; Technical Narrative ; Work

Scope; Division of Responsibilities; General Terms; Time and Material Rate Sheet; Service Agreement Terms and Conditions; Resumes.  See Exhibit B, page 2.

On September 30, 2014, Dave Wagner of Flambeau sent Patrick McNaughton of TGM an email with an attachment.  See Exhibit A, 2.  Mr. Wagner stated "Gentlemen, after intense review FRP [Flambeau River Papers] will accept the turbine generator major rebuild providing clarification of the following issues."  The attachment goes on to discuss eight different items, including warranty and cost.  While Flambeau touches upon many issues in this correspondence, it does not object to the Services Agreement attached to Proposal WI8429.  Id.

The purchase order in question is a single page document dated October 3, 2014 that Flambeau sent to TGM which confirms Flambeau's asset to the terms of TGM's revised proposal. A true and correct copy of this Purchase Order is attached hereto as Exhibit C.  The Purchase Order sets forth Flambeau's address for shipment and billing, and states the following in the Description portion in the middle of the page:

> PURCHASE ORDER TO COVER COSTS FOR SCOPE OF WORK REFERENCED ON PROPOSAL NO. WI8429 R2 DATED 9/18/14
> PAYMENT TERMS:
> --30% UPON RECEIPT OF PURCHASE ORDER
> --40% AT "MIDPOINT" OF THE WORK DEFINED AS ONE-HALF OF THE SCHEDULED OUTAGE DURATION
> --BALANCE NO LATER THAN THREE (3) DAYS FROM DEMOBILIZATION
> --CHANGE ORDERS WILL BE INVOICED UPON COMPLETION OF THE ASSOCIATED WORK OR AS DEFINED BY THE CHANGE ORDER DOCUMENT
> --NET 30 DAYS OF INVOICE DATE.  ONE (1%) DISCOUNT IF PAID WITHIN TEN (10) DAYS OF INVOICE DATE

A true and correct copy of this Purchase Order is attached hereto as Exhibit C.  These essential terms are identical to the terms set forth in TGM's September 18, 2014.  See Exhibit B, page 6,

Payment Terms.   In the far right column of the Purchase Order, the stated amount is "$332,685.00," the identical price listed by TGM in its proposal. See Exhibit B. at p. 5.

Despite Flambeau's claims that this Purchase Order is a counter-offer of the Proposal sent by TGM on September 18, the reality is that the Purchase Order is simply a restatement of the terms of the contract.    In fact, the Purchase Order references TGM's "proposal No. WI8429 dated 9/18/14" and states "PURCHASE ORDER TO COVER COSTS FOR SCOPE OF WORK REFERENCED ON PROPOSAL NO. WI8429 R2 DATED 9/18/14."  See Exhibit C.

It is well established that a contract may be comprised of several instruments in writing, so long as it demonstrates a meeting of the minds between the parties.  See e.g. Yun Enterprises, Ltd. v. Graziani, 840 So.2d 420 (Fla. 5th DCA 2003).   "The rule is clear that when a writing expressly refers to and sufficiently describes another document-in this case, the Certificate of Acceptance-the other document is to be interpreted as part of the writing." Woodward Tire Co. v. Hartley Realty Inc., 596 So.2d 1114 (Fla. 3d DCA), review denied, 605 So.2d 1264 (Fla. 1992).

Pursuant to contract law, the acceptance of an offer which results in an enforceable agreement must be (1) absolute and unconditional; (2) identical with the terms of the offer; and (3) in the mode, at the place, and within the time expressly or impliedly stated within the offer. Cheverie v. Geisser, 783 So.2d 1115, 1119 (Fla. 4th DCA 2001). Thus, an acceptance must contain an assent-or meeting of the minds-to the essential terms contained in the offer.  Nichols v. Hartford Ins., 834 So.2d 217 (Fla. 1st DCA 2002).  The definition of "essential term" varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis. Id. (citing Dimase v. Aquamar 176, Inc., 835 So.2d 1150 (Fla. 3d DCA 2002)).

Rather than being a counter-offer, this Purchase Order merely repeats the essential terms set forth in TGM's proposal and is part of the contract entered into by the parties and makes reference to TGM's proposal, which included the Services Agreement and the forum selection clause upon which the instant Motion to Transfer Venue is based.  This Purchase Order was then followed by two others, on November 20 and December 18, 2014, both of which are also part of the contract.  The contract was modified when representatives for both TGM and Flambeau executed 19 separate Change Orders between November 13 and December 18, 2014, all of which made reference to WI8429, the same project number on TGM's revised proposal of September 18, 2014.  Therefore, the October 3, 2014 Purchase Order is but a part of the contract, not its sum total.

### B.  Flambeau Attempts to Add Terms to the Contract

Flambeau argues that it "did not sign the Services Agreement and did not 'reference … the signed services agreement" in the Purchase Order."  Flambeau contends that the failure to sign the Services Agreement, or make reference to the services agreement, somehow turns the Purchase Order into a counteroffer.  This is the only basis for Flambeau's opposition to the Motion to Transfer Venue.  Flambeau's incomplete recitation of the Proposal intentionally misses the mark.

TGM's proposal states in full:

**A services agreement has been included as a part of this proposal package and includes the terms and conditions required for TGM to perform work at your site.**

A signed purchase order, or a letter of intent, from your company will be required prior to TGM's mobilization and performance of the work.  The purchase order will need to reference this proposal number and signed services agreement.  Upon

receipt of the signed purchase order, or letter of intent, a TGM Officer will sign
the document and a copy will be returned to you for your records.

<u>See</u> Exhibit B, page 7, Services Agreement (emphasis added).  It is clear that TGM would not perform work without the Service Agreement in the contract.  Flambeau never directly or specifically rejected this term or attempted to negotiate it with TGM.  <u>See</u> Exhibit A, letter of Dave Wagner.  For them to now argue that their Purchase Order was a counter-offer is dishonest and not supported by fact.

Furthermore, not only was Flambeau not required to sign the Services Agreement, there is no signature line for Flambeau to sign.  Therefore, Flambeau is merely trying to inject terms that are simply not there. The reason for this is that the proposal made clear that acceptance was to be made Flambeau sending "a signed purchase order, or a letter of intent " that would "reference this proposal number and signed services agreement." Furthermore, the services agreement is part of the very same document.  A straightforward reading of this proposal shows that all Flambeau needed to do to accept TGM's revised proposal was to send a "signed purchase order that "reference[s] this proposal number and signed agreement."

Furthermore, the sentence "The purchase order will need to reference this proposal number and signed services agreement" does not evidence mandatory language such as "must" or "shall".  The polestar guiding courts in the construction of a written contract is the intent of the parties and where the language used is clear and unambiguous, the parties' intent must be garnered from that language. <u>Agile Assurance Group v. Palmer</u>, 147 So.3d 1017 (Fla. 2nd DCA 2014).  Just as courts are often called to differentiate between "shall" and "may" in a contract, TGM's proposal used different language when discussing the requirement for a signed purchase order ("a signed purchase order… from your company **will be required** prior to TGM's

mobilization and performance of the work") and the information that should be included in the Purchase Order ("The purchase order **will need** to reference this proposal number and the signed services agreement.") (emphasis added).  While a signed purchase order was clearly mandatory, the items to be referenced in the purchase order were not mandatory.

Considering the actual intent of the parties, there is nothing in the parties' negotiations or communications leading up to the formation of the contract that suggests that Flambeau did not accept the Service Agreement in TGM's proposal. The submitted declarations do not state that they intended to reject the Services Agreement.   In fact as the September 30, 2014 correspondence from Flambeau to TGM demonstrates, Flambeau conducted an "intense review" and identified eight items that needed clarification, including warranty and cost.   While it touches upon many issues, Flambeau does not object to the Services Agreement attached to Proposal WI8429.

As the courts have found, the intent of the parties must be garnered from the clear and unambiguous language of the contract.  Agile Assurance Group v. Palmer, 147 So.3d 1017 (Fla. 2nd DCA 2014).   And in this case, the language of the proposal makes clear that all that was required was a signed purchase order from Flambeau.

## C. The Declarations Do Not Contradict the Inclusion of the Services Agreement as Part of the Contract

In her Declaration Kathy Lueloff states that she "created and signed Purchase Order No. 141730 and sent it to TGM…" See ¶5 of Lueloff Dec.  She goes on to state "I did not sign the Services Agreement sent to Flambeau by TGM… Nor did I refer to the Services Agreement in the Purchase Order I signed." See ¶6.

As noted above, TGM's proposal letter did not require that the Services Agreement be signed.  First, it contained no signature line for Flambeau to sign it.  Second, the "signed services agreement" is in reference to the fact that TGM had signed the Services Agreement prior to sending it to Flambeau with the revised proposal of September 18, 2014.  Finally, a careful review of the Lueloff, Randy Stoeckel, or Kevin Richard Declarations shows that it was not their intent to reject any portion of TGM's revised proposal.  The Declarations simply state that Lueloff prepared and signed the October 3, 2014 Purchase Order.  It does not say anywhere that Flambeau intended to carve out or reject the Services Agreement that TGM had submitted to Flambeau.  This is further supported by the September 30, 2014 correspondence from Mr. Wagner in which he identifies certain issues that need clarification, but never mentions or objects to the Services Agreement.

**D. Flambeau Invoked the Warranty Provision of the Very Contract It Seeks to Disavow**

The Purchase Order that Flambeau claims is a counter-offer does not contain a warranty. The only warranty provided by TGM is set forth in the revised proposal WI8429 and the Services Agreement that is incorporated into said proposal.

On October 12, 2015, counsel for Flambeau served a demand letter upon the undersigned in which Flambeau called upon TGM "to honor its warranty and remedy the deficiencies in the service that TGM performed on a generator at the premises of our client, Flambeau…"  A true and correct copy of said letter is attached hereto as Exhibit D.  The letter lists a number of alleged problems, then concludes "we call upon TGM to honor its warranty, remedy the problems set forth above, and send the necessary personnel and materials to do such warranty work..."  <u>See</u> Exhibit D.  Flambeau's invocation of the warranty clearly establishes that the

-11-

agreement between the parties included terms beyond those set forth in the October 3, 2014 Purchase Order such as the Services Agreement.


**E. The First-Filed Rule Supports Transfer to the Middle District Court of Florida**

This first-filed rule "is not intended to be rigid, mechanical, or inflexible," <u>Orthmann</u>, 765 F.2d at 121, but is to be applied in a manner best serving the interests of justice. The prevailing standard is that "in the absence of compelling circumstances," <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu</u>, 675 F.2d 1169, 1174 (11th Cir. 1982), the first-filed rule should apply. Under the "first-filed" rule, in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." <u>Rutlin v. United States</u>, 849 F.Supp. 34, 35 (E.D. Wis. 1994) (citing <u>Northwest Airlines, Inc. v. American Airlines, Inc.</u>, 989 F.2d 1002, 1005 (8th Cir. 1993)). Courts generally follow the first-filed rule unless the "balance of convenience" or "special circumstances" favor the second action.

Contrary to the Declarations submitted by Plaintiff, Flambeau did in fact reach out to Florida when it contacted TGM to solicit a Request for Proposal. It again reached out to Florida to request a revised proposal that met their requirements. Flambeau also emailed TGM for negotiations and clarifications, such as the September 30, 2014 correspondence form Mr. Wagner. In addition, Flambeau made a number of payments to TGM in Florida. Finally, Butch Johnson, president of Flambeau had telephone conversations with TGM in Florida in which he gave assurances to TGM that Flambeau would pay up to $920,000.00 for the services rendered. In the instant case, Florida, and the Middle District Court of Florida in particular, is the first court in which jurisdiction attaches has priority to consider the case." <u>Rutlin v. United States</u>, 849 F.Supp. 34, 35 (E.D. Wis. 1994) (citing <u>Northwest Airlines, Inc. v. American Airlines, Inc.</u>,

989 F.2d 1002, 1005 (8th Cir. 1993)).  Based on Flambeau's actions, jurisdiction attached first in the Middle District of Florida.

## CONCLUSION

For the reasons set forth above and in its previously filed Motion to Transfer Venue or, Alternatively, to Stay Proceedings, the Defendant, Turbine Generator Maintenance, Inc. respectfully requests that this Court transfer this matter to the United States District Court for the Middle District of Florida, Fort Myers Division.  Alternatively, the Defendant requests that this matter be stayed until such time as the Florida action has reached a final resolution.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 19, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail to any non-CM/ECF participants.

Dated:  October 19, 2015

  /s/  MARK C. ANDERSON, ESQ.
Florida Bar No. 631922
Buchanan Ingersoll & Rooney PC
*Attorneys for Plaintiff, Turbine Generator*
Post Office Box 1567
Fort Myers, Florida  33902
(239) 334-7892
(239) 334-3240  facsimile
mark.anderson@bipc.com